**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

**MARCO D. GREEN**

    **Plaintiff,**

v.                                                           **CV 08-PT-872-M**

**CITY OF GADSDEN, et al**

    **Defendants.**

**MEMORANDUM OF OPINION**

I. Introduction

The matter before this Court is Defendants' City of Gadsden and Whisenant's Motion for Summary Judgment. (Doc. 16.) Plaintiff seeks declaratory, injunctive, and monetary relief from Defendant Whisenant for his alleged violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and under various state law tort claims, including false arrest, false imprisonment, malicious prosecution, and abuse of process. Plaintiff also seeks to hold the City of Gadsden liable under both state and federal law.

The facts[1] of this case are as follows. On April 23, 2007, Plaintiff and others were playing cards at Plaintiff's residence in Gadsden, Alabama. Plaintiff's cousin, Benjamin Porter left the house in the early morning. While walking in the middle of the road, Porter was seen by Defendant

---

[1] The facts set out in this opinion are taken from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for the summary judgment purposes only. They may or may not be the "actual" facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Whisenant ("Whisenant"), who was on patrol. Whisenant attempted to engage Porter who, though verbally responding to Whisenant, did not stop walking. When Whisenant ordered Porter to stop, Porter fled. Whisenant gave chase and twice physically engaged Porter, who nevertheless broke free and continued fleeing. After the second disengagement, Whisenant observed Porter enter Plaintiff's yard. It is undisputed that Plaintiff was unaware of Porter's reentry and that none of the remaining guests in his home informed him of Porter's presence. Whisenant, after seeing Porter flee into Plaintiff's house, drew his sidearm and moved to the back of the residence. Whisenant then proceeded to the front door of the house and encountered Plaintiff. Whisenant advised Plaintiff he was in pursuit of a suspect.[2] At first, Whisenant informed Plaintiff he had seen someone run toward the house and then stated he had seen someone enter the house. Whisenant informed Plaintiff that he was going to enter the house to apprehend the suspect. Plaintiff refused him entry and stated that he was a disabled veteran recently discharged, that he had rights, and that Whisenant was entering his home without a warrant. A heated exchange ensued, and Whisenant grabbed Plaintiff's left arm, pulling him out of the house, grabbed Plaintiff's right arm, spinning him around, and proceeded to handcuff Plaintiff. Plaintiff informed Whisenant that he was not resisting and that Whisenant was hurting him. Plaintiff sat handcuffed on the porch while Whisenant and another officer who had arrived entered the home and removed Porter.

II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[2]There is no evidence that Whisenent previously knew of the relationship between the Plaintiff and Porter nor the ownership of the residence.

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding

a verdict in favor of that party. *Id.* at 251 (*quoting Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

III. Discussion

  Plaintiff seeks relief from Officer Whisenant and the City of Gadsden for violations of his constitutional rights and for tortious injury. Because any alleged liability against the Defendant City flows from Officer Whisenant, this Court will first address Officer Whisenant's grounds for dismissal.

  A. Constitutional Claims under 42 U.S.C. § 1983.

  Plaintiff has in part commenced this action under 42 U.S.C. § 1983 for violations of his constitutional rights, namely freedom from excessive force and the right to due process. (Complaint, Doc. 32-1.)[3] Plaintiff predicates both of these claims on Officer Whisenant's use of "unreasonable force" in effecting the Plaintiff's arrest. (Complaint, ¶¶ 29, 34, Doc. 32-1.) Thus, the Complaint clearly alleges that the gravamen of both of Plaintiff's constitutional injuries underlying his § 1983 claims arise out of the Officer Whisenant's alleged use of "unreasonable" force during a seizure. As a threshold matter, the Supreme Court has clearly held that "*all* claims that law enforcement officers have used excessive force – or not – in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly,

---

[3]The Defendants' Notice of Removal, as originally filed, did not include the Plaintiff's original state-court Complaint. (Doc. 1.) Defendant later filed the Complaint in a Notice (Doc. 32.).

Plaintiff's claims under § 1983 for violations of the substantive due process are due to be dismissed.

### B. Excessive Force Claims and Qualified Immunity

Plaintiff also asserts a § 1983 claim for violation his Fourth Amendment rights, specifically alleging that Officer Whisenant applied excessive force when arresting Mr. Green. (Doc. 32.) Defendant Whisenant asserts the defense of qualified immunity. (Doc. 17.) Certain government officials enjoy a "qualified immunity" from civil liability for acts executed pursuant to their discretionary duties. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). This doctrine protects officials such as law enforcement officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity allows government officials to execute their responsibilities "without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee*, 285 F.3d at 1194. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Qualified immunity is "an immunity from suit rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, immunity questions should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To enjoy qualified immunity, an official must first show that he was acting in the scope of his discretionary authority. *Lee*, 285 F.3d at 1194. That question is undisputed here. Once the defendant makes this showing, the burden shifts to the plaintiff to show that qualified immunity is

not appropriate. *Id.* Prior to the Supreme Court's decision in *Pearson*, this portion of the qualified immunity analysis was governed by the Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001). *Saucier* mandated a two-step process. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. *Id.* at 201. Second, if plaintiff meets his burden in step one, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Qualified immunity obtains unless the official's conduct violated a clearly established constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court re-considered this procedure very recently in *Pearson*. In that case, the Court stated:

> We conclude that, while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

129 S. Ct. at 819.

The Court based its decision in part on the recognition that strict adherence to the sequence of the two-step analysis "is an uncomfortable exercise where the answer to whether there was a [constitutional] violation may depend on a kaleidoscope of facts not full developed." *Id.* Furthermore, the Court noted that "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the facts make out a constitutional question at all." *Id.* at 820.

      1. *Lawfulness of the Arrest*

While Plaintiff alleges that Officer Whisenant did not possess probable cause to effect Plaintiff's arrest, (Complaint, ¶21, Doc. 32-1.), it seems clear that, under Alabama law, this is incorrect. "An arrest does not violate the Fourth Amendment if a police officer has probable cause for an arrest." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). "For probable cause to exist . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Id.* An arrest is objectively reasonable if the facts and circumstances within the officer's knowledge would cause a reasonably prudent person to believe that the suspect is committing or is about to commit an offense. *Id.*

Alabama law prohibits a person from intentionally preventing or attempting to prevent the lawful arrest of another person. ALA. CODE § 13A-10-41 (1975). A police officer may enter a home without a warrant under exigent circumstances, one of which is when that officer is in hot pursuit of a fleeing suspect. *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir.2002). It is undisputed that Whisenant was properly pursuing a fleeing suspect, one who had resisted investigation or arrest immediately before entering Plaintiff's home. It is also undisputed that Porter entered that home. There is no allegation that Officer Whisenant was aware that Plaintiff was *unaware* of the presence of the suspect. Given the totality of the circumstances, it was objectively reasonable that Officer Whisenant believed the suspect to be hiding in Plaintiff's home. Since the law clearly allows (under the facts at issue here) Officer Whisenant to enter a home, without a warrant, in order to apprehend a fleeing suspect, Plaintiff's resistance to Officer Whisenant's entry was a violation of ALA. CODE § 13A-10-41. Therefore, Officer Whisenant had probable cause to arrest the Plaintiff in order to proceed with apprehending Porter.

2. *Constitutional Violation Step*

Having established that Whisenant had probable cause to arrest Plaintiff, this Court must next determine whether qualified immunity is warranted under the two-part *Pearson* analysis.[4] The Eleventh Circuit has held that "when an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." *Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir. 2003) (citing *Lee*, 284 F.3d at 1196) (internal punctuation omitted). "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Id.* at 1094. "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). "What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown at the time." *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002).

When deciding whether the use of force violates a constitutional right, the courts should look to *Graham v. Connor*, 490 U.S. 386 (1989) as the touchstone of their inquiry. *Graham* mandates that courts are to apply the Fourth Amendment's "objective reasonableness" standard, which requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest's against the countervailing governmental interests at stake." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal punctuation omitted). In examining an officer's conduct, the court should look to the totality of the circumstances in determining whether the manner of the arrest

---

[4]Despite the freedom of inquiry that *Pearson* affords, this Court, in the interest of thoroughness, will discuss both the constitutional violation and clearly established prongs in order.

was reasonable. *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir. 2004) (citing *Garner*, 471 U.S. at 8-9)). The Eleventh Circuit has outlined the rubric for evaluating whether an officer's use of force is objectively reasonable. The court should consider (1) the need for the application of the force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted. *Lee*, 284 F.3d at 1198.[5] When assessing the need for the application of force, a court should look to whether the force used was reasonably proportionate to the need for that force, as measured by (1) the severity of the crime, (2) whether the suspect posed an immediate danger to the officer or others, and (3) whether the suspect was actively resisting arrest. *See Durruthy*, 351 F.3d at 1094. Qualified immunity applies unless application of the standard would inevitably lead every reasonable officer to conclude the force was unlawful. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).

Each of the *Lee* factors will be looked at in turn.

### a. Need for Application of Force

It is undisputed that Officer Whisenant was properly pursuing a suspect. It is undisputed that Plaintiff did not know the suspect was in the home. However, in looking at the facts objectively and as Officer Whisenant would have seen them at the time, at best Plaintiff was innocently, though stalwartly, barring him from apprehending a suspect who had twice broken away from Whisenant and who might still be fleeing or posing a danger to anyone in the home. At worst, it would appear

---

[5] Prior to *Graham*, this Circuit employed a four prong test which, in addition to the three prongs outlined above, included a subjective prong that required an inquiry into whether an officer's motive in applying force was sadistic or malicious. *See Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1992); *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986). However, the Eleventh Circuit has noted that, post-*Graham*, the subjective prong is "invalidated." *Nolin v. Isbell*, 207 F.3d 1253, 1257 n.3 (11th Cir. 2000). The remaining elements of the *Leslie* and *Moore* tests are still the law of this Circuit. *Lee*, 284 F.3d at 1198 n.7 (citing *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir.2000)).

to Officer Whisenant that Plaintiff was complicit in harboring the suspect or delaying Officer Whisenant so the suspect could make good his escape. Faced with Plaintiff's absolute refusal to allow his lawful entry, Officer Whisenant properly effected an arrest of Plaintiff and, at a minimum, could apply necessary force in so doing without violating the Constitution. *See Durruthy,* 351 F.3d at 1093. In the instant case, Plaintiff alleges that, after he refused entry to Officer Whisenant, "[t]he Officer grabbed the Plaintiff by his left arm, and pulled the Plaintiff out of the house, put his arms behind his back and cuffed the Plaintiff." (Complaint, ¶ 11, Doc. 32-1.) Plaintiff alleges he "advised the Officer that he [the Officer] was hurting him." (Complaint, ¶ 12. Doc. 32-1.) Plaintiff further alleges that he was denied treatment at the scene, and, after release, was diagnosed with a "fracture of the distal clavicle and separated shoulder." (Complaint, ¶¶ 12-14, Doc. 32-1.)[6,7]

As discussed above, Officer Whisenant had probable cause to arrest the Plaintiff. He is constitutionally allowed to use some force in effecting the arrest. Of the three *Graham* factors, it would appear that Plaintiff was not substantially resisting arrest or posing an immediate danger to the officer or others. However, viewing the situation in light of the totality of the circumstances leads to the conclusion that Plaintiff's refusal to allow Whisenant into his home constituted an offense.

The evidence, taken in a light most favorable to Plaintiff, only shows that Officer Whisenant grabbed the Plaintiff by one arm, spun him around, grabbed his other arm, and handcuffed him. For purposes of the necessity of force element under *Lee* and *Graham,* the evidence is that Officer Whisenant's conduct was reasonable.

---

[6] The Complaint's paragraph numbering omits "13," skipping from "12" to "14."

[7] Defendants have moved to strike this averment in the Complaint and in Plaintiff's brief as a medical conclusion unsupported by expert medical testimony. (Doc. 23.) Because the putative injury, even assuming it did occur, does not affect this Court's determination, that motion to strike is to be found moot.

b. Relationship Between the Need and Amount of Force

In addition to the force described above, Plaintiff asserts in his brief that while handcuffing him, Officer Whisenant "grabbed Green by the right arm, spun him around and turned his right wrist in awkward position, and with such force dislocating Green's right shoulder and breaking his clavicle." (Doc. 20.) Even taking the factual allegations by the Plaintiff in their most favorable light does not turn this element in Plaintiff's favor. There is nothing in Plaintiff's description (again limiting this question's inquiry to the force and need element) that puts Whisenant's handcuffing force beyond that required to successfully handcuff and detain a person. If a person does not willingly turn his back and raise his wrists behind him, an officer *must* grab both arms and turn the person around to effect the handcuffing. There are no allegations or evidence of other force being used, such as hitting, punching, being taken to the ground, striking with an instrument, slamming against a wall or other surface, etc. If handcuffing, without more, results in a broken limb, that injury may transform the injury into more than a *de minimis* amount. However, the severity of the injury is not the proper focus under this factor; rather, it is the amount of force actually used and the need for the application of that force at the moment of arrest. *See Graham*, 490 U.S. at 396-97 . ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.") The Eleventh Circuit has described in some detail a handcuffing procedure that, all other things being equal, is an acceptable means of restraint under the Fourth Amendment.

> Sgt Farrell grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that Farrell was hurting him.

> Plaintiff was placed in the rear of Sgt. Farrell's patrol car, kept handcuffed behind his back and transported to the police station.
>
> ...
>
> The handcuffing technique used by Sgt. Farrell is a relatively common and ordinarily accepted non-excessive way to detain an arrestee.

*Rodriguez*, 280 F.3d at 1351.

There is no evidence – or even an allegation – that Whisenant applied more force in arresting Plaintiff than that described in *Rodriguez*. In fact, unlike in *Rodgriguez,* Plaintiff does not even allege that his arm was jerked up high to the shoulder, which is a more forceful action than restraining an arm while securing cuffs around the wrists. The record does not show any aggravating or more forceful actions than those approved of in *Rodriguez*. The evidence shows that Whisenant handcuffed Plaintiff in a manner that officers routinely use.

### c. Extent of Injury Inflicted

Plaintiff asserts that the handcuffing broke his clavicle and dislocated his shoulder. (Doc. 20.) Defendants have moved to strike this assertion because it is unsupported by medical testimony. (Doc. 23.) Plaintiff also asserts in his brief that surgery was performed on him for these injuries, which Defendants also seek to strike as it "lacks foundation." (Doc. 23.) While it is true that, at the summary judgment stage, allegations of a medical diagnosis must be supported by some form of expert opinion, record, or testimony, it is also true that any person is competent to know when he or she has sustained an injury to a limb such that use of that limb is partially or wholly impaired. Thus, taking the evidence in a light most favorable to the nonmoving party, the court can conclude that Plaintiff suffered a disabling injury to his arm and/or shoulder. Whether or not the handcuffing caused this injury, and whether or not the Plaintiff's injury is, in fact, what he alleges it to be, is

unsupported by competent medical testimony. However, this Court will consider Plaintiff's assertions as true, and assume that he did suffer his alleged injury to his arm and shoulder as a result of the handcuffing. The extent of the injury therefore appears to be serious.

### d. Conclusion

A consideration of the three *Lee* factors leads this Court to conclude that Officer Whisenant's use of force was objectively reasonable. There was a need for use of force to effect the arrest, and the application of the force does not appear from the evidence, even when considered in a light most favorable to the Plaintiff, to have been more than necessary to effect an arrest.

The only evidence weighing in favor of a constitutional violation is the injury sustained by Plaintiff, putatively as a result of the handcuffing. However, even assuming his clavicle was broken as the result of the handcuffing, Whisenant's conduct does not rise to the level of a constitutional violation. The Eleventh Circuit has expressly stated that typical arrests, properly effected, may involve some force and *some injury*. *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000). *See also Schultz v. Hall*, 365 F. Supp. 2d 1218, 1229 (N.D. Fla. 2005) ("The unfortunate fact that the deputies' actions evidently resulted in causing a hairline fracture of Plaintiff's left humerus does not, as Plaintiff apparently would have it, mean *ipso facto* that the force used was excessive.") Thus, while the Plaintiff's alleged injuries, assuming there is proper evidence of his injuries being attributable to the handcuffing, are more than *de minimis*, there is no evidence in the record that the injuries arose from the application of excessive force. The inquiry must look at the attendant circumstances, and the extent of injury is but one element to consider. The record indicates – and Plaintiff puts forth no evidence other than the alleged injury itself – that Officer Whisenant executed a handcuffing procedure that is materially similar to that approved by the Eleventh Circuit. While

Plaintiff's injuries are regrettable, they do not, by themselves, transform Whisenant's actions into a Fourth Amendment violation.

### 3. *Clearly Established Step*

Despite this Court's conclusion that Plaintiff suffered no violation to his Fourth Amendment rights, in the alternative, this Court also concludes that, assuming there was a constitutional violation of a right, the right was not clearly established. When determining whether a constitutional right is clearly established, the inquiry "'must be taken in light of the specific context of the case, not as a broad general proposition.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002) (quoting *Saucier*, 533 U.S. at 201). "The relevant dispositive inquiry determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. If the law does not "put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* The touchstone for this inquiry is "whether the state of the law gave officers *fair warning* that their alleged treatment of the plaintiff was unconstitutional." *Vinyard*, 311 F.3d at 1350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 2516 (2002) (internal punctuation omitted).

The Eleventh Circuit has outlined a three-step inquiry in determining whether a right was so clearly established so as abrogate qualified immunity. First, "the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the *total absence of case law*." *Vinyard*, 311 F.3d at 1350 (emphasis original). When qualified immunity is denied in these "obvious clarity" cases, it is because the conduct was "far beyond the hazy border between excessive and acceptable force." *Id.* at 1350 n.18. A cursory review

of "obvious clarity" cases in this Circuit reveals the police conduct in those cases to be of an egregious nature. *See*, *e.g.*, *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (holding force was excessive in absence of case law when police released a dog to attack plaintiff who was lying on the ground and not attempting to flee or endanger police officers or others). *Compare Smith v. Mattox*, 127 F.3d 1416, 1419-20 (11th Cir. 1997) (holding police conduct was "barely" beyond the "hazy border" because after handcuffing and subduing of a suspect, the officer kneeled on his back and "with a grunt and blow" broke plaintiff's arm). Second, if the conduct does not violate a statute or constitutional provision on its face, then the court must look to pertinent case law. *Vinyard*, 311 F.3d at 1351. Case law may articulate a broad principle that is not tied to particularized facts and can clearly establish the law applicable in the future to different sets of facts. *Id.* Third, if there is no case law with a broad holding that is not tied to particularized facts, then the court must look to precedent that is tied to the facts. *Id.*

Nothing in the record in the instant case puts Whisenant's conduct in the class of "obvious clarity" cases. At worst, Whisenant effected an arrest with a routine handcuffing procedure that was performed negligently or incorrectly so as to injure the plaintiff. At best, the handcuffing was performed correctly, but an injury nevertheless resulted through no fault of Whisenant's. This conduct in no way approaches even the lower bound of excessive force illustrated in *Mattox*.

Furthermore, the parties do not put forth and our research does not reveal any broad statements of principle in this Circuit or from the Supreme Court that would render Whisenant's conduct a breach of clearly established law. The Eleventh Circuit, in *Rodriguez*, approved of a very similar method of handcuffing that Whisenant used. Also, there are no aggravating circumstances in this case that might transform an otherwise routine handcuffing into a breach of the law. *Cf. Lee*

*v. Ferraro*, 284 F.3d 1188 (11th Cir.2002) (affirming denial of immunity because officer violated clearly established law when he took plaintiff to the back of her car after she was handcuffed and secured and posed no danger, and slammed her head against the car's trunk). If anything, the broad, non-fact specific principles articulated in this Circuit are in favor of concluding that Whisenant's conduct was lawful. *See*, *e.g.*, *Rodriguez*, 280 F.3d at 1351; *Nolin*, 207 F.3d at 1257 (lawful arrest may result in some injury). Also, while not precedential, at least one other district court has addressed a qualified immunity defense on facts similar to the ones at issue here. In *Schultz*, plaintiff suffered a hairline fracture to her humerus during a routine handcuffing similar to the kind executed by Whisenant. The court in that case stated that such an injury, in light of the Eleventh Circuit's statement in *Nolin*, does not "mean *ipso facto* that the force was excessive." 365 F. Supp. 2d at 1228.

Finally, Plaintiff does not offer any case law with particularized facts similar enough to the ones in the instant case whose holding would put Officer Whisenant on notice that his handcuffing procedure would be a violation of clearly established law. This Court's research likewise reveals no cases where the facts are materially similar in such a way as to warrant denial of qualified immunity for Whisenant's conduct. Officer Whisenant's handcuffing was not a violation of clearly established law.

### 4. *Conclusion*

Thus, while whatever injuries plaintiff suffered are unfortunate, based on the evidence construed in a light most favorable to the Plaintiff, Officer Whisenant is entitled to qualified immunity because his conduct in effecting the arrest and handcuffing the Plaintiff did not violate plaintiff's constitutional rights and, even if it did, it was not a breach of clearly established law.

### C. Plaintiff's Remaining Federal Law Claims

Plaintiff seeks to hold the City of Gadsden liable for violations of § 1983. A municipality may be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action alleges unconstitutional implementation or execution of policies, ordinances, regulations, or decisions officially adopted by that body's officers. *Monell v. Dep't of Social Serv's of City of New York*, 436 U.S. 658, 691 (1978). No evidence or allegations are put forth by the Plaintiff that would render the City of Gadsden liable under *Monell*.[8] Furthermore, § 1983 claims may not be brought against a municipality under a *respondeat superior* theory. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). Accordingly, Plaintiff's direct § 1983 claims against the City are due to be dismissed.

D. Plaintiff's State Law Claims

Plaintiffs also seeks relief for claims brought under Alabama state law. Complaint (Doc. 32-1.) and Amended Complaint (Doc. 6.) A district court has discretion to decline to exercise supplemental jurisdiction over state law claims when

(1) the claim raises a novel or complex issue of state law;

(2) the claim substantially predominates over the claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a case has been removed on the basis of federal question jurisdiction, " a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."

---

[8] It would appear that Plaintiff has abandoned any such claim.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). *See also United Mine Workers v. Gibbs*, 383 U .S. 715, 726 (1966) ("Needless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law[;][c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). This Court declines to exercise supplemental jurisdiction, and Plaintiff's remaining claims are due to be remanded to state court.[9]

IV. Conclusion

Plaintiff's § 1983 claims against Defendant Whisenant and the City of Gadsden are due to be **DISMISSED**. All remaining state law claims are due to be **REMANDED** to state court. An order consistent with this opinion will be entered.[10]

This the 16th day of April, 2009.

_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**

---

[9] There are state law issues relating to the pending appeal of Plaintiff's conviction of an offense.

[10] The Court has also considered the following recent Eleventh Circuit cases: (1) *McCullough v. Antolini*, ___ F.3d ___, 2009 WL 469327 (11th Cir. Feb. 26, 2009); (2) *Lewis v. City of West Palm Beach, Florida*, ___ F.3d ___, 2009 WL 606546 (11th Cir. March 11, 2009) and (3) *Fennell v. Gilstrap*, ___ F.3d ___, 2009 WL 485187 (11th Cir. Feb. 27, 2009).